UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| SHAWN YVETTE BROWN, | ) | Civil Action No.: 4:23-cv-00597-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| -vs- | ) | |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits(DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

### I. RELEVANT BACKGROUND

**A.     Procedural History**

Plaintiff filed an application for DIB in August 2020, alleging disability beginning on July 2019. (Tr. 15). Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held in April 2022, at which time Plaintiff and a vocational expert (VE) testified. (Tr. 15). The Administrative Law Judge (ALJ) issued an unfavorable decision on April 14, 2022, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 15-29). Plaintiff filed a request for review of the ALJ's decision. The Appeals Council denied the request

for review. (Tr. 1-4).   In February 2023, Plaintiff filed this action. (ECF No. 1).

B.    **Plaintiff's Background and Medical History**

Plaintiff was born in April 1969 and was fifty years old on the alleged disability onset date. (Tr. 28). Plaintiff had past work as a counter attendant, kitchen helper, and line server. (Tr. 27). Plaintiff alleges disability originally due to arthritis in right shoulder and left knee, torn meniscus in left knee, allergies, sleep apnea, high blood pressure, tendonitis in shoulders, carpal tunnel, and numbness in fingers. (Tr. 78).  Relevant records will be addressed under the pertinent issue headings.

C.    **The ALJ's Decision**

In the decision of April 2022, the ALJ made the following findings of fact and conclusions of law (Tr. 15-29):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since July 4, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative joint disease, adhesive capsulitis of the left shoulder, obesity, and sleep apnea (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Specifically, the claimant can lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently. She can sit for 6 hours in an 8-hour day and stand and/or walk for 6 hours in an 8-hour day, with normal breaks. She is limited to no climbing of ladders or scaffolds and occasional crawling, kneeling, and crouching. She is limited to frequent balancing and stooping and frequent reaching with the left upper extremity. She can have

       no exposure to work hazards.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.     The claimant was born on April 9, 1969 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8.     The claimant has a limited education (20 CFR 404.1564).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from July 4, 2019, through the date of this decision (20 CFR 404.1520(g)).

## II. DISCUSSION

Plaintiff argues the ALJ erred in formulating the RFC as to Plaintiff's left knee (ECF No. 12 at 8-9).

Plaintiff appears to also argue the ALJ erred in the subjective symptom evaluation but Plaintiff provided no citation or analysis of the applicable SSR 16-3p factors. (ECF No. 12 at 9-10). Plaintiff appears to briefly disagree with the ALJ's evaluation of Dr. Rojugbokan and presents no argument or citation in relation to the applicable regulatory factors. (ECF No. 12 at 10). In accordance with *Dowling v. Comm'r*, 986 F.3d 377, 387 (4th Cir. 2021),while related and affecting each other, the RFC and subjective symptom evaluation are separate analysis and the court will

address Plaintiff's arguments separately. Defendant argues the ALJ applied the correct law and relied on substantial evidence in finding Plaintiff not disabled.

A.   **LEGAL FRAMEWORK**

    1.   **The Commissioner's Determination–of–Disability Process**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5)

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S.

whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*,

---

521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

## 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

B.   ANALYSIS

**RFC**

Plaintiff argues the ALJ erred in formulating the RFC as to Plaintiff's left knee (ECF No. 12 at 8-9).

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

The ALJ found an RFC of:

light work as defined in 20 CFR 404.1567(b). Specifically, the claimant can lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently. She can sit for 6 hours in an 8-hour day and stand and/or walk for 6 hours in an 8-hour day, with normal breaks. She is limited to no climbing of ladders or scaffolds and occasional crawling, kneeling, and crouching. She is limited to frequent balancing and stooping

7

and frequent reaching with the left upper extremity. She can have no exposure to work hazards.

(Tr. 20). Plaintiff cites the evidence the ALJ cited in regard to her left knee. Plaintiff notes the ALJ stated there was very limited evidence related to the knee with later exams showing tenderness but no strength or gait abnormalities and that the ALJ discussed the consultative exam of reduced range of motion and reduced strength with limping gait. (ECF No. 12 at 8-9). Plaintiff cites her cane use and imaging of mild to moderate changes and that the ALJ stated there was no evidence a cane was prescribed. (ECF No. 12 at 9). Plaintiff argues that logically the knee impairment fluctuated somewhat, but Plaintiff argues "more logical" is that she received medical care "infrequently and for a variety of conditions." (ECF No. 12 at 9). Plaintiff asserts a cane was recommended in May 2019, citing pages 312-314. (ECF No. 12 at 9). Plaintiff argues she was not capable of the stand/walk requirements of the ALJ's RFC. (ECF No. 12 at 10).

As to the cane, Plaintiff cites Dr. Merrill's May 2019 note. History in that note stated Plaintiff takes "Motrin, uses a cane, and says she gets around okay." (Tr. 312). Upon exam, "left knee shows collapse on the medial side...left knee is more tender along the medial side." (Tr. 314). Dr. Merrill noted the imaging showed a complete loss of cartilage space medially. "I recommended she use a cane since she needs to ambulate." Under assessment of arthritis left knee under treatment, it states "Start Misc. Devices, Miscellaneous, as directed, WALKING CANE, daily 1, Refills 0." (Tr. 314). The ALJ noted "while the claimant ambulated into the clinic with a single point cane, the claimant would pick the cane up at times and not use it for any support."  (Tr. 23-24). The ALJ found: "Moreover, there is no evidence that a cane or other ambulatory device has been prescribed or is medically necessary. She was noted to appear with a cane at a physical therapy appointment in June

2021. However, the examiner noted she was able to ambulate with the cane raised and did not use it for support at times. (Exhibit B11F)." (Tr. 24).

Defendant's brief did not specifically address Plaintiff's arguments as to the cane. Plaintiff asserts "Dr. Merrill recommended the use of a cane," citing pages 312-314. A recommendation or even a prescription[3] does not equate to a medically required hand-held assistive device for SSA purposes. A cane evaluation involves a more detailed assessment[4] for which this record is unsupportive. Substantial evidence supported the ALJ's findings that the evidence did not support finding a cane as medically necessary.

The ALJ specifically analyzed the record in detail as to Plaintiff's knee:

In terms of her knee pain, the claimant has a history of an arthroscopic medial meniscal repair of the knee in February 2016, prior to her alleged onset date. The record reflects that the claimant reported she twisted her knee on October 19, 2019. A physical examination from October 22, 2019 reflects that she exhibited tenderness of the left knee along the medial joint line with mild crepitations on range of motion. X-rays of the left knee revealed sclerosis and narrowing of the medial compartment with button of the meniscus repair apparent. (Exhibit B1F). There is very little evidence showing she subsequently sought treatment for left knee pain until June 2020. She exhibited some tenderness along the medial side of the left knee at time, but no strength deficits or gait abnormalities were noted. (Exhibit B1F). The examiner noted he reviewed the claimant's prior October 2019 left knee x-ray, which

---

[3] If the court construes the record in Plaintiff's favor, a prescription may be what was listed on page 314 since it addressed refills.

[4] To find that a hand-held assistive device is <u>medically required</u>, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded. SSR96-9p at *7(as applicable to an RFC for less than a full range of sedentary work, but viewed by courts as lending guidance as to other exertions).

>he noted showed some osteoarthrosis with significant medial compartment narrowing and some patellofemoral arthrosis. (Exhibit B1F). November 2020 treatment notes reflect that the claimant ambulated with a normal gait and no abnormalities of her left knee were noted. (Exhibit B8F).

(Tr. 23). The ALJ discussed the knee impairment specifically as to Dr. Rojugbokan's consultative exam, noting slightly reduced (140 of 150 degrees) range of motion of the left knee and slightly reduced (4/5) strength of the lower extremity, limping, slow, and unbalanced, abnormal gait, no kind of assistive or ambulatory device, short not shuffling steps, difficulty squatting, and some difficuting tandem walking, citing Exhibit B7F, the consultant's exam and opinion in December 2020. (Tr. 23, 490-496). The ALJ noted that only two weeks after that exam, Plaintiff reported a focus on exercise, walking two times a week for 45 minutes, citing Exhibit 12F, a mid-December 2020 note with NP Leech of Obesity Medicine. Plaintiff examined with no abnormalities two weeks after the consultative exam. (Tr. 23-24, 641). The ALJ discussed exams in February 2021 of normal gait, citing Exhibit B12F, Bariatric Surgery clinic notes, where Plaintiff also reported some difficulty exercising. (Tr. 24, 631, 635). The ALJ noted Plaintiff reported watching her four grandchildren once a week. (Tr. 24, 629). In April 2021, Plaintiff declined a left knee injection, had some left knee crepitation, normal strength, and normal gait. Plaintiff was not interested in a knee replacement. (Tr. 24, 594). The ALJ considered summer 2021 physical therapy notes indicated decreased stride length but no other gait deficits and Plaintiff was not using the cane for any support, citing Exhibit B11F,[5] which was four PT visits over one month. (Tr. 24, 575). The ALJ reviewed November 2021 imaging, which showed mild to moderate arthritic changes of the knee joints with no effusion, citing

---

[5] In the patient knee survey in June 2021, Plaintiff reported a level two as to both frequency of knee pain and the severity of the pain. (Tr. 584). Plaintiff listed function prior to knee injury and current function of knee as the same, a level two. (Tr. 585).

Exhibit B12F. (Tr. 24, 592, 646). Plaintiff complained about her right knee later in 2021 and the exam at that time reflected no abnormalities of the extremities, no strength deficits, and no gait abnormalities. (Tr. 24, 593-594). The ALJ considered:"The examining physician noted his suspicion that the claimant's right knee pain stemmed from chronic compensatory movements placed on her right leg. The examining physician noted the claimant had previously declined a recommended left knee injection and knee replacement. (Exhibit B12F)." (Tr. 24, 594). Plaintiff was only prescribed over-the-counter medications for osteoarthritis of right knee. (Tr. 594).

> The ALJ continued a chronological review of records related to Plaintiff's knees:
>
> The claimant was seen for a cough in January 2022. However, no musculoskeletal abnormalities were documented at that time. In fact, the claimant was noted to exhibit normal motor movement and normal coordination with intact sensation. She also had normal range of motion. (Exhibit B13F). The record is generally devoid of any strength deficits of the lower extremities, other than slightly reduced strength (4/5) strength noted of the left lower extremity at her consultative examination. Moreover, there is no evidence that a cane or other ambulatory device has been prescribed or is medically necessary. She was noted to appear with a cane at a physical therapy appointment in June 2021. However, the examiner noted she was able to ambulate with the cane raised and did not use it for support at times. (Exhibit B11F). I have accounted for the claimant's impairments of the bilateral knees in limiting the amount she can lift, carry, perform postural activities and be exposed to hazards. However, the overall physical examinations of record do not indicate that her knee impairments impose greater limitations.

(Tr. 24).

Here, the ALJ discussed the evidentiary basis for the RFC at length, including much more than just the applicable discussion about the left knee; Plaintiff presents argument as to the left knee. (ECF No. 12 at 9-10). The ALJ went through Plaintiff's records with citation to exams of both normal and abnormal exam findings, Plaintiff's activities, Plaintiff's allegations, and objective imaging findings. (Tr.23-24). The ALJ provided discussion supported by the record sufficient for

11

this court to meaningfully review the ALJ's conclusions regarding the RFC in relation to Plaintiff's knees and the stand/walk findings. Substantial evidence supports the ALJ's RFC determination.

The Court cannot say that a reasonable mind would not reach this RFC in view of the totality of the evidence. The ALJ supported the functional limitations found in the ALJ's RFC determination with discussion and citation to substantial evidence in the record. Even where there is evidence that might have resulted in a contrary decision, our review is limited to whether substantial evidence supports the ALJ's decision. An RFC is "an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." *Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). The court does not reweigh the evidence. *See Johnson v. Saul*, No. 5:20-cv-47-KDW, 2021 WL 717250, at *10 (D.S.C. Feb. 24, 2021)("Even if the evidence highlighted by Plaintiff could support a different result, the court's role is not to second-guess the ALJ's findings.") Based upon the foregoing, substantial evidence supports the ALJ's RFC.

**<u>Subjective Symptom Evaluation</u>**

The single-issue main heading of Plaintiff's brief was only in regard to the RFC. (ECF No. 12 at 1). Plaintiff also appears to argue the ALJ erred in the subjective symptom evaluation, but Plaintiff provides no citation or analysis of the applicable SSR 16-3p factors.[6] (ECF No. 12 at 9)("The ALJ's finding that Ms. Brown's allegations were unsupported because she agreed to increase

---

[6] *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument-even if its brief takes a passing shot at the issue.") (cleaned up). The Fourth Circuit has stated that the courts "are not like pigs, hunting for truffles buried in briefs. Similarly, it is not our job to wade through the record and make arguments for either party." *Hensley v. Price*, 876 F.3d 573, 581 (4th Cir. 2017). Despite the perfunctory nature of Plaintiff's additional arguments, the undersigned will address the issues that appear to be raised in Plaintiff's brief.

her activity to two walks per week, or that she watched her grandchildren is also not fair a representation of the record.").

The Fourth Circuit Court of Appeals has recently made clear that an RFC determination "is a separate and distinct inquiry from a symptom evaluation." *Dowling v. Comm'r*, 986 F.3d 377, 387 (4th Cir. 2021). SSR 16-3p sets out "the process ALJs use to evaluate the intensity and persistence of a claimant's symptoms and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the record." *Id.*(internal citations and quotations omitted).

Under *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact-finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to evaluate the intensity and persistence of symptoms to determine how symptoms limit capacity for work. *See also* 20 C.F.R. § 404.1529; SSR16-3p, *4.

The ALJ may choose to reject a claimant's testimony regarding his condition, but the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). A claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" *Craig*, 76 F.3d at 595.

13

The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See id.*; *see* SSR 16-3p, at *4.

A claimant's statements about intensity, persistence, and limiting effects of symptoms, which are inconsistent with the objective medical evidence and other evidence, are less likely to reduce his capacity to perform work related activities. SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). An individual's symptoms are evaluated based on consideration of objective medical evidence, an individual's statements directly to the Administration, or to medical sources or other sources, and the following factors:

> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). The ALJ at step three is to "consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record." SSR 16-3p, at *11.

The ALJ reviewed Plaintiff's allegations:

> At the hearing, the claimant testified that she is 5'2" tall and weighs 220 pounds. She stated she allowed her driver's license to lapse. She reported she has an eleventh-grade education and can read and write. The claimant testified she has not worked since the alleged onset date. She stated she previously worked at the VA in dietary services alternating being a counter person in the coffee shop, being a kitchen

14

>  helper and being a line server in the cafeteria. The claimant stated that she cannot work presently because she has difficulty moving around. She reported constant left leg and left shoulder pain. She testified she is prescribed a cream to apply to the affected areas for pain relief.
>
>  The claimant maintained she **cannot sit for two minutes** or stand for two minutes and **initially stated that she could not walk at all** but then stated she can walk to the bathroom. She stated that she cannot use her hands for any purpose. She reported **her mother helps her brush her teeth and feed her**. The claimant reported she receives treatment for anxiety and depression but has not been in counseling. She testified she lives in a house with her mother. She stated that in terms of personal need tasks, she needs help doing all tasks. The claimant reported she performs no household chores. She stated she spends the day at home in her bedroom, reading and watching television.

(Tr. 21)(emphasis added). The ALJ found that Plaintiff's MDIs could reasonably be expected to "cause a few of the alleged symptoms," but Plaintiff's statements about the intensity, persistence, and limiting effects of symptoms were not entirely consistent with the evidence for the reasons explained.

Plaintiff briefly asserts that Plaintiff was eventually unable to exercise and unable to babysit grandchildren and that the ALJ's reliance on these two activities was error. (ECF No. 12 at 9-10). The ALJ relied extensively and specifically on the record evidence and not just these two notations. In performing the subjective symptom evaluation, the ALJ noted that the record did not corroborate the degree of pain Plaintiff alleged as to functioning. (Tr. 21). The ALJ extensively reviewed allegations, visit records, exams, imaging, and opinions. (Tr. 21-27). The ALJ concluded: "I have considered her impairments and her subjective reports of pain in limiting the amount she can lift, carry, perform postural activities, and reach with the left upper extremity. Additionally, I have considered her reports of pain, her obesity, and her sleep apnea in limiting her exposure to work hazards. However, for the reasons set forth above, I cannot find the claimant's assertion that she is incapable of all work activity to be consistent with the record as a whole." (Tr. 27). The ALJ credited

that Plaintiff had some alleged limitations supported by the evidence and gave an RFC of reduced functionality.

The ALJ supported his finding—that Plaintiff's statements about the intensity, persistence, and limiting effects of symptoms were not entirely consistent with the evidence— with citation to substantial evidence. There is no outcome determinative error here; Plaintiff's allegations were analyzed in accordance with the appropriate regulations by the ALJ. *See also Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1999)("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). A claimant's allegations alone can never establish that she is disabled. 20 C.F.R. § 404.1529. An ALJ can discount a Plaintiff's subjective complaints when they are unsupported by the record. 20 C.F.R. § 404.1529; *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996). Plaintiff is not required to be without symptoms to be found not disabled by the ALJ. Even where there is conflicting evidence that might have resulted in a contrary decision, our review is limited to whether substantial evidence supports the ALJ's decision. Based on the evidence before the ALJ, the ALJ conducted a proper evaluation of subjective symptoms and cited substantial evidence to support the finding that Plaintiff's allegations of disabling symptoms were inconsistent with the record.

**Dr. Rojugbokan**

Plaintiff appears to briefly disagree with the ALJ's evaluation of Dr. Rojugbokan and presents no argument or citation in relation to the applicable regulatory factors. (ECF No. 12 at 10). Plaintiff's brief stated: "The ALJ characterized all of Dr. Rojugbokan's findings as 'overly broad and vague' but Dr. Rojugbokan's specific comment regarding sustained walking and standing is clearly

16

contrary to the ALJ's RFC assessment and supported by the record. The ALJ did not fairly address this." (ECF No. 12 at 10). Plaintiff does not cite or analyze the applicable regulation, 20 C.F.R. § 404.1520c, as to a doctor's opinion. The ALJ made a detailed assessment of Dr. Rojugbokan's consulting opinion supported by citation to substantial evidence in the record as a whole. (Tr. 25-26).

### III. CONCLUSION

This court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). As previously discussed, despite the Plaintiff's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, and pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

November 9, 2023  
Florence, South Carolina

s/ Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge